IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

In the Matter of:                                       Case No.:
**EZZELL TRUCKING, INC.**                               **10-00492-8-JRL**
   **Debtor**                             **Chapter 11**

## PLAN OF REORGANIZATION
April 22, 2010

TRAWICK H. STUBBS, JR.
N.C. State Bar No. 4221

LAURIE B. BIGGS
N.C. State Bar No. 31845

WILLIAM H. KROLL
N.C. State Bar No. 39149

STUBBS & PERDUE, P.A.
Attorneys for Debtor
8450 Falls of Neuse Road, Suite 206
Raleigh, NC  27615
(919) 870-6258

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WILSON DIVISION**

In the Matter of:                                          Case No.:
**EZZELL TRUCKING, INC.**                          **10-00492-8-JRL**
  Debtor                                              **Chapter 11**

## PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor hereby submits the following Plan of Reorganization:

## I.  SUMMARY OF PLAN

The Plan contemplates a reorganization and continuation of the Debtor's business.  In accordance with the Plan, the Debtor intends to satisfy certain creditor claims from income earned through continued operations.

The Debtor's Plan of Reorganization is based on the Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize its debts.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor. A summary of the terms proposed for secured creditors was attached to the Disclosure Statement as Exhibit "D." Exhibit "D" is meant to be a summary of the treatments proposed for secured creditors only. Creditors are encouraged to read the full text of the Plan for the full treatment of each creditors' claim. In the event of a conflict between the Disclosure Statement, including all exhibits attached thereto and the Plan, the terms of the Plan will control.

## II.  DEFINITIONS

1.        "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.        "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3.        "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title ll

of the United States Code, as enacted in 1978 and thereafter amended.  References to "§ ___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

4.      "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

5.      "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

6.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

7.      "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

8.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

9.      "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

10.      "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtors.

11.      "CREDITORS" shall mean all creditors of the Debtors holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

a.      "DEBTOR" shall mean the Debtor (or Debtors, if more than one) identified on the first page of this Plan.

12.      "DISBURSING AGENT" shall mean Trawick H. Stubbs, Jr., attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

13.      "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with § 1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

14.      "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

15.      "DISTRIBUTION DATE" shall mean the date on which distributions are to be

made under the Debtor's Plan.

16.    "EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

17.    "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

18.    "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

19.    "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

20.    "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

21.    "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition.

22.    "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

23.    "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

24.    "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

25.    "SALE" shall mean the sale of certain assets of the Debtor under this Plan.

26.    "SALE PROCEEDS" means the proceeds of the Sale of certain assets of the Debtor under this Plan, after payment of all reasonable and ordinary closing costs, including but not limited to ad valorem taxes, commissions, and any other costs permitted under § 506(c) of the Code.

27.    "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

28.   "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

29.   "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to § 507(a)(8).

## III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The Debtor classifies the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

### Class 1 - Administrative Costs:

(1)   Description of Claims.  Class 1 consists of claims for any cost or expense of administration pursuant to §§ 503, 506, and 507 of the Bankruptcy Code.

The following claims of professionals will be paid subject to Court approval:

| Stubbs & Perdue, P.A. | Attorney for the Debtor | To be determined by the Court |
|---|---|---|
| Howard & Bradshaw, PLLC | Special counsel for the Debtor | To be determined by the Court |
| Denning & Sessoms | CPA for the Debtor | To be determined by the Court |
| Oscar Williamson/Caldwell Banker Commercial | Real Estate Broker for the Debtor | 6% Commission |
| Dearbury Oil & Gas Co., Inc. | Goods provided | $43,720.22 |

(2)   Impairment.  This class will be impaired.

(3)   Treatment.  Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within the later of ten days from the Effective Date of the Plan or approval of such claims.

In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder who agrees to receive payments over time shall receive payments from the Debtor following the Effective Date from the Debtor's cash flow until paid in full.  Such claims remaining unpaid ten days following the Effective Date shall accrue interest at a rate of six percent (6%) per annum.

### Class 2 – Pre-Petition Wages, Salaries, and Commissions:

(1)   Classification. The claims in this class consist of claims for pre-petition wages, salaries, and commissions owed by the Debtor to employees of the Debtor within 180 days of the petition date that are given priority under § 507(a)(4).  The Debtor is aware of claims in this Class totaling $78,659.79. These claims arise from vacation time or other similar wages claims to which such employees were entitled on the Petition Date.

(2)     Impairment.     This class will be impaired.

(3)     Treatment.     This class shall be paid the full amount of their allowed claims as agreed upon by the Debtor and the specific employee.

**Class 3 – Ad Valorem Taxes:**

(1)     Description of Claims.  Class 2 consists of claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  The Debtor is aware of the following claim(s) in this Class:

| Claimant | Claim # | Amount |
|---|---|---|
| Lee County | | $          579.91 |
| New Hanover County | 52 | $      4,357.02 |
| Pitt County | 7 | $          325.74 |
| Sampson County | 30 | $    51,431.33 |

(2)     Impairment.     This class will be unimpaired.

(3)     Treatment.     The Debtors proposes to pay claims in this class with quarterly payments over a period of five (5) years from the Petition Date.   Quarterly payments shall commence on the earlier of January 15, April 15, July 15, or October 15 following the Effective Date and shall continue quarterly thereafter, and shall include annual interest at the statutory rate.

**Class 4 – Tax Claims:**

(1)     Description of Claims.  Class 4 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes, and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service, the North Carolina Department of Revenue, the South Carolina Department of Revenue, or the Employment Security Commission, plus interest as allowed by law.

| Claimant | Claim # | Amount |
|---|---|---|
| Internal Revenue Serv. | 3 amended | $    30,966.64 |
| NC DOR - Motor Fuels | | $      4,300.00 |
| SC DOR - Motor Carrier Property Tax | | $    21,936.13 |
| Employment Security Commission of NC | 15 | $      1,670.08 |

(2)     Impairment.  This class will be unimpaired.

(3)     Treatment.  The Debtors proposes the following treatment:

6

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date.

**Unsecured priority tax claims**, described in § 507(a)(8) of the Bankruptcy Code shall be paid in full in quarterly installments over a period not exceeding five (5) years from the Petition Date and payments shall commence on the earlier of January 15, April 15, July 15, or October 15 following the Effective Date and shall continue quarterly thereafter, with interest at the statutory rate as of the date of confirmation of the Plan, currently four percent (4%) per annum.

**Secured claimants**, shall retain their secured interest in the property of the Debtor. The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate, currently four percent (4%) per annum. The Debtor shall pay these claims over a period not to exceed five (5) years from the Petition Date beginning on the earlier of January 15, April 15, July 15, or October 15 following the Effective Date, and shall continue quarterly thereafter, with interest at the statutory rate. These claims may also be satisfied in whole or in part from the sale of the real or personal property securing such claims, after satisfaction of senior claims.

In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue ("Department"), then, subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court. The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved. The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20. Notwithstanding any other provisions of the Plan and the confirmation order, the Department shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent that the treatment for the Secured Claimants in Class 4 expressly states that such tax lien will not be treated as secured or fully secured in the treatment for Class 4. Absent such express language in the treatment for Class 4, any such lien may be ruled unenforceable by the Bankruptcy Court only upon the filing of a separate pleading and after notice and a hearing.

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

### Class 5 – All Points Capital Corp. ("All Points"):

(1)    <u>Description of Debt</u>.  The Debtor is indebted to this creditor in connection with the two (2) loans described below:

(a)    <u>Acct. #4016-00022</u>: The Debtor and All Points entered into a promissory note dated January 23, 2007, in the original principal amount of $251,469.00 ("Note 1"). Note 1 provided for a fixed rate of interest at 7.63% per annum.  Note 1 called for 83 monthly payments of principal and interest in the amount of $3,679.91, with a final

7

payment of all outstanding principal and interest due on January 20, 2014, estimated to be $25,146.90.  Note 1 was secured by a first priority lien on the following trailers:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45207T199174 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45227T199175 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45247T199176 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45267T199177 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45287T199178 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A452X7T199179 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45267T199180 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45287T199181 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A452X7T199182 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45217T199183 |

All Points was owed $170,224.72 on the Petition Date.

(b)     Acct. #2016-00027: The Debtor and All Points entered into a promissory note dated January 31, 2007, in the original principal amount of $246,933.00 ("Note 2"). Note 2 provided for a fixed rate of interest at 7.77% per annum.  Note 2 called for 83 monthly payments of principal and interest in the amount of $3,635.12, with a final payment of all outstanding principal and interest due on February 5, 2014, estimated to be $24,693.30.  Note 2 was secured by a first priority lien on the following trailers:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045247PA55546 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045267PA55547 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045287PA55548 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE0452X7PA55549 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045267PA55550 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045287PA55551 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE0452X7PA55552 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE405217PA55553 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE405237PA55554 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045257PA55555 |

All Points was owed $170,094.24 on the Petition Date.

The security agreements for Notes 1 and 2 contain cross-collateral provisions whereby the specific collateral in each Note secures the obligations in the remaining Note.

(2)     Impairment.  This class will be impaired.

(3)    <u>Treatment</u>.  The Debtor's two obligations to All Points shall be consolidated into one new obligation (the "All Points Note") that shall be secured by the same collateral as existed prior to the Petition Date.  The following terms shall apply to this new obligation:

a.    The All Points Note shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources.

b.    All Points shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its  claim is paid in full.

c.    From and after the Effective Date, interest shall accrue on the All Points Note at 5% per annum.

d.    The Debtor shall make 239 monthly payments to All Points based on a 20 year amortization schedule, with one final payment of all outstanding principal and interest due after 240 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

e.    All prepayment penalties shall be eliminated.

f.    The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  All Points shall be named as the loss payee on such policies.

g.    The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

h.    The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

i.    Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

j.    All Points shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

k.    <u>Sale of collateral</u>. The Debtor may seek to sell the collateral identified above.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V of the Plan.  The net proceeds of sale, after payment of all costs of sale, shall be paid to All Points and shall be applied first to outstanding interest, if any, and next to principal.  The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein.  On the date which

is 6 months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balance on this obligation shall be reamortized over the remaining 234 month term of this obligation, and the monthly payment shall be adjusted accordingly. The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date. The Debtor may continue to sell the collateral securing this claim after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

### Class 6 – BB&T Automotive Claims:

(1)     Description of Debt. The Debtor is indebted to this creditor in connection with the three (3) loans described below:

a.     2006 Impala: The Debtor and BB&T entered into a retail installment sale contract dated July 5, 2006, in the original principal amount of $14,682.89 ("Note 1"). Note 1 provided for a fixed rate of interest at 6.39% per annum. Note 1 called for forty-eight (48) monthly payments of principal and interest in the amount of $348.38. Note 1 was secured by a first priority lien on a 2006 Chevrolet Impala with VIN number 2G1WB58K569368821. BB&T filed claim number 46 in the amount of $2,408.66. The Debtor has made adequate protection payments to BB&T since the filing of this case.

b.     2007 Impala: The Debtor and BB&T entered into a retail installment sale contract dated July 20, 2007, in the original principal amount of $15,000.00 ("Note 2"). Note 2 provided for a fixed rate of interest at 6.39% per annum. Note 2 called for forty-eight (48) monthly payments of principal and interest in the amount of $355.02. Note 2 was secured by a first priority lien on a 2007 Chevrolet Impala with VIN number 2G1WT55K779133338. BB&T filed claim number 47 in the amount of $6,443.26. Debtor has made adequate protection payments to BB&T since the filing of this case.

c.     2009 Cadillac: The Debtor and BB&T entered into a retail installment sale contract dated August 26, 2009, in the original principal amount of $29,991.00 ("Note 3"). Note 3 provided for a fixed rate of interest at 5.69% per annum. Note 3 called for sixty (60) monthly payments of principal and interest in the amount of $575.46. Note 3 was secured by a first priority lien on a 2009 Cadillac CTS with VIN number 1G6DF577390151155. BB&T filed claim number 45 in the amount of $28,367.08. Debtor has made adequate protection payments to BB&T since the filing of this case.

(2)     Impairment. This class will be impaired.

(3)     Treatment. The Debtor's three obligations to BB&T shall remain three separate obligations, each secured by the same collateral as existed prior to the Petition Date. The following terms shall apply to each obligation, except as noted:

a.     The obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and

expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources.

b.        BB&T shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

c.        From and after the Effective Date, interest shall accrue on each obligation at 5% per annum.

d.        For each of the obligations on Notes 1 and 2 (2006 Impala and 2007 Impala), the Debtor shall make 35 monthly payments to BB&T based on a 3 year amortization schedule, with one final payment of all outstanding principal and interest due after 36 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

e.        For the obligation on Note 3 (2009 Cadillac), the Debtor shall make 59 monthly payments to BB&T based on a 5 year amortization schedule, with one final payment of all outstanding principal and interest due after 60 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

f.        The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  BB&T shall be named as the loss payee on such policies.

g.        The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

h.        The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

i.        Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

j.        BB&T shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

**Class 7 – BB&T Real and Personal Property Loans:**

(1)        Description of Debt.  There are six obligations of BB&T contained within this class, further described as follows:

a.        Note 53 - Ryder Truck Rental Inc. ("Ryder") LOC: BB&T issued an LOC with Ryder as the beneficiary on October 29, 2009 in the amount of $28,000.00 ("LOC 1").  The Debtor and BB&T entered into a promissory note in a principal amount equal to the amount of LOC 1, with interest accruing at a variable rate of interest equal to

BB&T's prime rate plus 1% per annum from the date LOC 1 was presented for payment. The note is secured by a lien on the Debtor's real property known as 11535 Taylors Bridge and 223 and 235 Sutton Lake Road.  BB&T filed claim number 21 in the amount of $28,000.00.

  b. <u>Liberty Mutual Insurance Company ("Liberty Mutual") LOC</u>: BB&T issued an LOC with Liberty Mutual as the beneficiary on February 3, 2009 in the amount of $402,000.00.  This LOC was subsequently modified such that the amount of the LOC was reduced to $302,000.00 on January 26, 2010 ("LOC 2").  The Debtor and BB&T entered into a promissory note in a principal amount equal to the amount of LOC 2, with interest accruing at a variable rate of interest equal to BB&T's prime rate plus 1% per annum from the date LOC 2 was presented for payment.  The note is secured by a lien on the Debtor's real property known as 11535 Taylors Bridge and 223 and 235 Sutton Lake Road.  BB&T filed claim number 22 in the amount of $407,527.50.

  c. <u>Note 32 - Great West Casualty Company ("Great West") LOC</u>: BB&T issued an LOC with Great West as the beneficiary on July 23, 2003 in the amount of $400,000.00.  This LOC was subsequently modified such that the amount of the LOC was reduced to $200,000.00 on October 30, 2009 ("LOC 3").  The Debtor and BB&T entered into a promissory note in a principal amount equal to the amount of LOC 3, with interest accruing at a variable rate of interest equal to BB&T's prime rate plus 1% per annum from the date LOC 3 was presented for payment.  The note is secured by a lien on the Debtor's real property known as 11535 Taylors Bridge and 223 and 235 Sutton Lake Road, and certain trailers as further described in BB&T's proof of claim.  BB&T filed claim number 23 in the amount of $200,000.00.

  d. <u>Note 46</u>:  The Debtor and BB&T entered into a promissory note dated February 12, 2007, in the original principal amount of $184,750.00(the "Note").  The Note called for an amortization length of sixty months whereby the Debtor was to make 59 equal monthly payments of principal and interest in the amount of $3,914.31 with a final payment of all outstanding principal and interest due on February 12, 2012.  The Note called for a variable rate of interest equal to BB&T's prime rate plus 1% per annum with a minimum interest rate of 5.25% per annum.  The note is secured by a lien on the Debtor's real property known as 11535 Taylors Bridge and 223 and 235 Sutton Lake Road and a lien on the Debtor's equipment.  BB&T filed claim number 24 in the amount of $79,615.38.

  e. <u>Note 16</u>:  The Debtor and BB&T entered into a promissory note dated August 6, 1999, in the original principal amount of $977,484.98, and subsequently modified by the parties (the "Note").  Pursuant to a modification dated February 2, 2009, the Note called for 23 monthly payments of principal and interest in the amount of $3,069.99 with a final payment of all outstanding principal and interest due on February 2, 2011.  The Note called for a variable rate of interest equal to the BB&T's prime rate plus 1% per annum with a minimum interest rate of 5.25% per annum.  The note is secured by a lien on the Debtor's real property known as 11535 Taylors Bridge and 223 and 235 Sutton Lake Road.  BB&T filed claim number 25 in the amount of $271,174.66.

     f.      <u>Note 39 – Cooper Leasing ("Cooper") LOC</u>: BB&T issued an LOC with Cooper as the beneficiary on January 10, 2005 in the amount of $200,000.00.  This LOC was subsequently modified such that the amount of the LOC was reduced to $100,000.00 ("LOC 5").  The Debtor and BB&T entered into a promissory note in a principal amount equal to the amount of LOC 5, with interest accruing at a variable rate of interest equal to BB&T's prime rate plus 1% per annum from the date LOC 5 was presented for payment.  The note is secured by a lien on the Debtor's real property known as 11535 Taylors Bridge and 223 and 235 Sutton Lake Road.  BB&T filed a motion for relief from stay, asserting that the amount owed on this claim is $37,239.07.

     g.      <u>Note 24 - Penske Truck Leasing ("Penske") LOC</u>: BB&T issued an LOC with Penske as the beneficiary on July 26, 2001 in the amount of original amount of $218,000.00 ("LOC 4").  LOC 4 was reduced to $175,000.00 on November 3, 2004. The Debtor and BB&T entered into a promissory note in a principal amount equal to the amount of LOC 4, with interest accruing at a variable rate of interest equal to BB&T's prime rate plus 1% per annum from the date LOC 4 was presented for payment.  The note is secured by certain trailers as specified in BB&T's proof of claim.  BB&T filed claim number 39 in the amount of $179,812.50.

(2)     <u>Impairment</u>.  This class will be impaired.

(3)     <u>Treatment</u>.  The six obligations comprising BB&T's allowed claim will be divided into new notes as follows: Note A (comprised of Note 16, Note 24, Note 39, and Note 53),  Note B (Note 46), Note C (Note 32 - Great West LOC), and Note D (Liberty Mutual LOC), and shall be treated as follows:

     a.      <u>Note A</u>. The follow terms shall apply to Note A.

     i.      Note A shall have a principal balance in an amount equal to the (a) all outstanding principal and interest due on Note 16, Note 24 (Penske LOC), Note 39 (Cooper LOC), and Note 53 (Ryder LOC) on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources on account of these claims.

     ii.      Note A shall be secured by the real property known as 11535 Taylors Bridge and 223 and 235 Sutton Lake Road, and a lien on the Debtor's equipment, such lien to have the same validity, priority, and effectiveness as BB&T's liens had on the Petition Date.

     iii.      The Debtor shall make 83 monthly payments to BB&T based on a 30 year amortization schedule, with one final payment of all outstanding principal and interest due after 84 months.

iv.      Interest shall accrue on Note A from and after the Effective Date at a variable rate equal to the BB&T prime rate plus 1% per annum.

v.      All prepayment penalties shall be eliminated.

vi.      The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  BB&T shall be named as the loss payee on such policies.

vii.      The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

viii.      The Debtor shall pay all property taxes when due, except for taxes paid through this Plan.

ix.      Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

x.      BB&T shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

xi.      As soon as practical after the Effective Date, the Debtor and BB&T will execute new promissory notes and deeds of trust incorporating the terms of this Plan and Note A.  BB&T shall retain its senior lien priority on the real property collateral.  All previous deeds of trust shall be cancelled.

xii.      The Debtor has the real property known as 223 and 235 Sutton Lake listed for sale.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V of the Plan.  BB&T shall be entitled to a minimum of 50% of the gross proceeds of the sale, and the Debtor shall be entitled to the net proceeds of the sale after payment of all costs of sale and any additional amounts necessary paid to BB&T to ensure that BB&T remains secured for the debt remaining on Note A.  The proceeds paid to BB&T shall be applied first to outstanding interest, if any, and next to principal on Note A.  The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein.  On the date which is 6 months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balance on Note A shall be reamortized over the remaining term of this obligation, and the monthly payment shall be adjusted accordingly.  The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date. The Debtor may continue to sell the real property collateral securing Note A after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

14

b.      <u>Note B</u>. The following terms shall apply to Note B:

i.      Note B shall have a principal balance in an amount equal to the (a) all outstanding principal and interest due on Note 46 on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources on account of these claims.

ii.      Note B shall be secured by a lien on the trailers for which BB&T had possession of the titles on the Petition Date, such lien to have the same validity, priority, and effectiveness as BB&T's liens had on the Petition Date.

iii.      The Debtor shall make 59 monthly payments to BB&T on Note B based on a 5 year amortization schedule, with one final payment of all outstanding principal and interest due after 60 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan and shall continue until the Payment Reamortization Date (defined below).

iv.      Interest shall accrue on Note B from and after the Effective Date at a variable rate equal to the BB&T prime rate plus 1% per annum.

v.      All prepayment penalties shall be eliminated.

vi.      The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  BB&T shall be named as the loss payee on such policies.

vii.      The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

viii.      The Debtor shall pay all property taxes when due, except for taxes paid through this Plan.

ix.      Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

x.      BB&T shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

xi.      Upon complete payment of Note B, BB&T shall release its liens on the trailers and return the titles to the Debtor.

xii.     As soon as practical after the Effective Date, the Debtor and BB&T will execute new promissory notes incorporating the terms of this Plan and Note B.

xiii.     <u>Sale of collateral</u>. The Debtor may sell some or all of the collateral securing this claim at any time.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V of the Plan.  The net proceeds of sale, after payment of all costs of sale, shall be paid to BB&T and shall be applied first to outstanding interest, if any, and next to principal on Note B.  The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein.  On the date which is 6 months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balance on Note B shall be reamortized over the remaining 54 month term of this obligation, and the monthly payment shall be adjusted accordingly.  The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date.  The Debtor may continue to sell the collateral securing Note B after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

c.     <u>Note C - Liberty Mutual LOC</u>.  The Liberty Mutual LOC has not been drawn upon as of the date of the filing of this Plan.  The existing terms of the Liberty Mutual LOC, the promissory note, and the underlying letter of credit documents will remain unchanged.

d.     <u>Note D – Great West Casualty Company ("Great West") LOC</u>.  The Great West LOC has not been drawn upon as of the date of the filing of this Plan. The existing terms of the Great West LOC, promissory note, and the underlying letter of credit documents will remain unchanged.

### Class 8 – Commercial Credit Group ("CCG"):

(1)     <u>Description of Debt</u>.  The Debtor and CCG entered into a promissory note dated March 20, 2009, in the original principal amount of $300,000.00 (the "Note").  The Note called for 36 monthly payments of principal and interest in the amount of $9,872.00, with the total amount of the note $355,392.00.  The Note did not provide the interest rate, but the approximate rate of interest at a fixed rate would be 11.35% per annum.  The Note was secured by a first priority lien on the following trailers pursuant to a security agreement dated March 20, 2009:

.

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2000 | ITI | 45 foot - 96 wide | 1Z92A4523YTO29330 |
| 2000 | ITI | 45 foot - 96 wide | 1Z92A4525YTO29331 |
| 2001 | ITI | 45 foot - 96 wide | 1Z92A45271T029112 |
| 2001 | ITI | 45 foot - 96 wide | 1Z92A45291T029080 |
| 2001 | ITI | Possum | 1Z92C48201T029099 |

| 2003 | Peerless | 45 foot - 96 wide | 1PLE045253PK53124 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045273PK53125 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045293PK53126 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045203PK53127 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045222PK53128 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045243PK53129 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045203PK53130 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045223PK53131 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045243PK53132 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045263PK53133 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045283PK53134 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045253PD53310 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045273PD53311 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045293PD53312 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045203PD53313 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045223PD53314 |
| 2003 | Peerless | 45 foot - 96 wide | 1PLE045243PD53315 |
| 2004 | Peerless | 45 foot - 96 wide | 1PLE045124PM53578 |
| 2004 | Peerless | 45 foot - 96 wide | 1PLE045234PM53579 |
| 2004 | Peerless | 45 foot - 96 wide | 1PLE0452X4PM53580 |
| 2004 | Peerless | 45 foot - 96 wide | 1PLE045214PM53581 |
| 2004 | Peerless | 45 foot - 96 wide | 1PLE045234PM53582 |
| 2004 | Peerless | 45 foot - 96 wide | 1PLE045254PM53583 |

Pursuant to certain cross collateralization language contained in a security agreement dated December 20, 2006, CCG also asserts a lien on the following trailers:

| Year | Model | Description | VIN # |
| --- | --- | --- | --- |
| 2001 | Stoughton | Dry | 1DW1A53231B496925 |
| 2001 | Stoughton | Dry | 1DW1A53251B496926 |
| 2001 | Stoughton | Dry | 1DW1A53291B496928 |
| 2001 | Stoughton | Dry | 1DW1A53201B496929 |
| 2001 | Stoughton | Dry | 1DW1A53271B496930 |
| 2001 | Stoughton | Dry | 1DW1A53291B496931 |
| 2001 | Stoughton | Dry | 1DW1A53201B496932 |
| 2001 | Stoughton | Dry | 1DW1A53261B496935 |
| 2001 | Stoughton | Dry | 1DW1A53281B496936 |
| 2001 | Stoughton | Dry | 1DW1A53201B496915 |
| 2001 | Stoughton | Dry | 1DW1A53241B496917 |
| 2001 | Stoughton | Dry | 1DW1A53261B496918 |
| 2001 | Stoughton | Dry | 1DW1A53281B496919 |
| 2001 | Stoughton | Dry | 1DW1A53241B496920 |

CCG was owed $250,393.06 as of the Petition Date.

(2)      Impairment.  This class will be impaired.

(3)      Treatment.  The Debtor's obligations to CCG shall remain secured by the same collateral as existed prior to the Petition Date.  The following terms shall apply to the obligation:

a.      The obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources.

b.      CCG shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its  claim is paid in full.

c.      Interest shall accrue on each obligation at 5% per annum.

d.      The Debtor shall make 179 monthly payments to CCG based on a 15 year amortization schedule, with one final payment of all outstanding principal and interest due after 180 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan and shall continue until the Payment Reamortization Date (defined below).

e.      All prepayment penalties shall be eliminated.

f.      The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  CCG shall be named as the loss payee on such policies.

g.      The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

h.      The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

i.      Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

j.      CCG shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

k.      Sale of collateral. The Debtor intends to sell the Dry Van trailers identified above as collateral of CCG.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V of the Plan.  The net proceeds

of sale, after payment of all costs of sale, shall be paid to CCG and shall be applied first to outstanding interest, if any, and next to principal. The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein. On the date which is 6 months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balance on this obligation shall be reamortized over the remaining 174 month term of this obligation, and the monthly payment shall be adjusted accordingly. The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date. The Debtor may continue to sell the collateral securing this claim after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

### Class 9 – DaimlerChrysler Truck Finance ("DaimlerChrysler"):

(1)      Description of Debt. The Debtor is indebted to this creditor in connection with the two (2) loans described below:

(a)      Acct. #17499: The Debtor and DaimlerChrysler entered into a direct purchase money loan and security agreement dated December 9, 2005, in the original principal amount of $1,297,750.00 and finance charges of $299,394.20 ("Note 1"). Note 1 called for 60 monthly payments of principal and interest in the amount of $26,619.07. The approximate interest rate associated with Note 1, if calculated at a fixed rate, is 8.49% per annum. Note 1 was modified on March 2, 2009, whereby the Debtor agreed to pay DaimlerChrysler $11,532.79 in finance charges and $1,330.95 in late fees and DaimlerChrylser agreed to extend the terms of payment by three months. Note 1 was secured by a first priority lien on the following tractors:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV86LX01106 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CVX6LX01107 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV16LX01108 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV36LX01109 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CVX6LX01110 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV16LX01111 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV36LX01112 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV56LX01113 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV76LX01114 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV96LX01115 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV06LX01116 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV26LX01117 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV46LX01118 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV66LX01119 |
| 2006 | Freightliner | CL 120 Sleeper | 1FUJA6CV26LX01120 |

The Debtor has made adequate protection payments in the amount of $18,000.00 per month to DaimlerChrysler since the filing of this case. DaimlerChrysler was owed $377,546.43 as of the Petition Date.

(b)     Acct. #22796: The Debtor and DaimlerChrysler entered into a direct purchase money loan and security agreement dated May 31, 2006, in the original principal amount of $882,260.00 and finance charges of $207,391.00 ("Note 2").  Note 2 called for 60 monthly payments of principal and interest in the amount of $18,160.85.  The approximate interest rate associated with Note 2, if calculated at a fixed rate, is 8.64% per annum.  Note 2 was secured by a first priority lien on the following tractors:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2006 | Freightliner | CL 120 Day Cab | 1FUJA6CK46LW41346 |
| 2007 | Freightliner | CL 120 Day Cab | 1FUJA6CK37LX68493 |
| 2007 | Freightliner | CL 120 Day Cab | 1FUJA6CK57LX68494 |
| 2007 | Freightliner | CL 120 Day Cab | 1FUJA6CK77LX68495 |
| 2007 | Freightliner | CL 120 Day Cab | 1FUJA6CK97LX68496 |
| 2007 | Freightliner | CL 120 Day Cab | 1FUJA6CK07LX68497 |
| 2007 | Freightliner | CL 120 Day Cab | 1FUJA6CK27LX68498 |
| 2007 | Freightliner | CL 120 Day Cab | 1FUJA6CK47LX68499 |
| 2007 | Freightliner | CL 120 Day Cab | 1FUJA6CK77LX68500 |
| 2007 | Freightliner | CL 120 Day Cab | 1FUJA6CK97LX68501 |

The Debtor has made adequate protection payments in the amount of $12,000.00 per month to DaimlerChrysler since the filing of this case.  DaimlerChrysler was owed $352,767.98 as of the Petition Date.

Notes 1 and 2 contain cross-collateral provisions whereby the specific collateral in each Note secures the obligations in the remaining Notes.

(2)     Impairment.  This class will be impaired.

(3)     Treatment.  The Debtor's two obligations to DaimlerChrysler shall remain two separate obligations, each secured by the same collateral as existed prior to the Petition Date.  The following terms shall apply to each obligation:

a.     Each obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources.

b.     DaimlerChrysler shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

c.    From and after the Effective Date, interest shall accrue on each obligation at 5% per annum.

d.    The Debtor shall make 35 monthly payments to DaimlerChrysler for Note 1, based on a 3 year amortization schedule, with one final payment of all outstanding principal and interest due after 36 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

e.    The Debtor shall make 47 monthly payments to DaimlerChrysler for Note 2, based on a 4 year amortization schedule, with one final payment of all outstanding principal and interest due after 48 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

f.    All prepayment penalties shall be eliminated.

g.    The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  DaimlerChrysler shall be named as the loss payee on such policies.

h.    The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

i.    The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

j.    Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

k.    DaimlerChrysler shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

l.    Sale of collateral. The Debtor may sell some or all of the collateral securing this claim at any time.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V of the Plan.  The net proceeds of sale, after payment of all costs of sale, shall be paid to Daimler Chrysler and shall be applied first to outstanding interest, if any, and next to principal.  The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein.  On the date which is 6 months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balances on Notes 1 and 2 shall be reamortized over the remaining 30 and 42 month terms of these obligations, and the monthly payment shall be adjusted accordingly.  The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date.  The Debtor may continue to sell the collateral

after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

**Class 10 – FCC Equipment Finance, LLC ("FCC"):**

(1)     Description of Debt.  The Debtor is indebted to this creditor in connection with the two (2) loans described below:

a.     Schedule #1: The Debtor and FCC entered into a promissory note dated November 20, 2006, in the original principal amount of $279,710.00 ("Note 1").  Note 1 called for 84 monthly payments of principal and interest in the amount of $4,311.00, with the total amount of the note $362,124.00.  Note 1 did not provide the interest rate, but the approximate rate of interest at a fixed rate would be 7.72% per annum.  Note 1 was secured by a first priority lien on the following trailers pursuant to a master security agreement dated November 20, 2006:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45257T199154 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45277T199155 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45297T199156 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45207T199157 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45227T199158 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45247T199159 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45207T199160 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45227T199161 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45247T199162 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45267T199163 |

b.     Schedule #2: The Debtor and FCC entered into a promissory note dated December 6, 2006, in the original principal amount of $279,710.00 ("Note 2").  Note 2 called for 84 monthly payments of principal and interest in the amount of $4,311.00, with the total amount of the note $362,124.00.  Note 2 did not provide the interest rate, but the approximate rate of interest at a fixed rate would be 7.72% per annum.  Note 2 was secured by a first priority lien on the following trailers pursuant to a master security agreement dated November 20, 2006:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45287T199164 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A452X7T199165 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45217T199166 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45237T199167 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45257T199168 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45277T199169 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45237T199170 |

| 2007 | ITI | 45 foot - 102 wide | 1Z92A45257T199171 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45277T199172 |
| 2007 | ITI | 45 foot - 102 wide | 1Z92A45297T199173 |

The master security agreement contains cross-collateral provisions whereby the specific collateral in each Note secures the obligations in the remaining Note. FCC was owed $358,719.50 as of the Petition Date. The Debtor has made adequate protection payments to FCC since the filing of this case.

(2)      Impairment. This class will be impaired.

(3)      Treatment. The Debtor's two obligations to FCC shall be consolidated into one obligation secured by the same collateral as existed prior to the Petition Date. The following terms shall apply to the obligation:

a.      The obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources.

b.      FCC shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

c.      From and after the Effective Date, interest shall accrue on each obligation at 5% per annum.

d.      The Debtor shall make 239 monthly payments to FCC based on a 20 year amortization schedule, with one final payment of all outstanding principal and interest due after 240 months. Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

e.      All prepayment penalties shall be eliminated.

f.      The Debtor shall maintain insurance on the collateral in such types as are standard in the industry. FCC shall be named as the loss payee on such policies.

g.      The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

h.      The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

i.    Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

j.    FCC shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

k.    <u>Sale of collateral</u>. The Debtor may sell some or all of the Chip trailers identified above as collateral of FCC.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V of the Plan.  The net proceeds of sale, after payment of all costs of sale, shall be paid to FCC and shall be applied first to outstanding interest, if any, and next to principal.  The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein.  On the date which is six (6) months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balance on this obligation shall be reamortized over the remaining 114 month term of this obligation, and the monthly payment shall be adjusted accordingly.  The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date.  The Debtor may continue to sell the collateral securing this claim after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

**Class 11 – Flagship Credit Services ("Flagship"):**

(1)    <u>Description of Debt</u>.  The Debtor and Flagship entered into an equipment finance agreement dated October 15, 2007, to purchase six (6) generators with the serial numbers 0973TC8496, 0973TC8497, 0973TC8493, 0973TC8486, 0973TC8487, and 0973TC8492 with a value of $47,400.00 (the "Note").  The Note called for an initial payment of $1,372.69, followed by 48 monthly payments of principal and interest in the amount of $1,297.69, followed by 1 payment of $1.00.  The Note did not provide the interest rate, but the approximate rate of interest at a fixed rate would be 14.1% per annum.  The Note was secured by a first priority lien on the generators pursuant to a security agreement dated October 15, 2007.  Flagship filed claim number 14 in the amount of $28,549.18.

(2)    <u>Impairment</u>.  This class will be impaired.

(3)    <u>Treatment</u>.  The Debtor's obligations to Flagship shall remain secured by the same collateral as existed prior to the Petition Date.  The following terms shall apply to the obligation:

a.    This obligation shall be treated as a secured obligation in an amount equal to $9,000.00, representing the fair market value of the collateral securing this claim.

b.      Flagship shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

c.      From and after the Effective Date, interest shall accrue on each obligation at 5% per annum.

d.      The Debtor shall make 83 monthly payments to Flagship based on a 5 year amortization schedule, with one final payment of all outstanding principal and interest due after 84 months.  Monthly payments in the amount of $169.84 will begin on the 15th day of the first full month following the Effective Date of the Plan.

e.      All prepayment penalties shall be eliminated.

f.      The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  Flagship shall be named as the loss payee on such policies.

g.      The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

h.      The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

i.      Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

j.      Flagship shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

k.      The balance of this claim in the approximate amount of $19,549.18 shall be treated in the General Unsecured Creditor Class.

### Class 12 – GE Capital Corp. ("GECC"):

(1)     <u>Description of Debt</u>.  The Debtor and CitiCapital Commercial Corporation entered into a Transportation Accounts Financing and Security Agreement on June 24, 1999. This 1999 Agreement was amended, superseded and replaced by an Amended and Restated Transportation Accounts Financing and Security Agreement dated May 27, 2004.  This 2004 Amended Agreement was subsequently amended various times by the parties (hereinafter the Amended Agreement and subsequent amendments shall be referred to as the "Agreement"). GECC is the successor in interest to CitiCapital.  Pursuant to the Agreement, GECC agreed to loan the Debtor up to $2,000,000.00; the actual amount of financing was based primarily upon a percentage (80-85%) of the Debtor's accounts receivables. The Debtor and GECC entered into several DIP financing orders continuing this relationship, as modified in those Orders.  This debt was secured by a first priority lien on:

a.      All of the Debtor's accounts, contracts, general intangibles, notes, drafts and any other form of obligations or indebtedness owed to or owned by the Debtor arising or resulting from the sale of goods or the rendering of services together with all guaranties and security therefor, and all goods and rights represented thereby or arising therefrom;

b.      Monies, securities, and other property now or hereafter held or received by, or in transit to GECC;

c.      Returned, reclaimed, or repossessed goods arising from any Accounts and the documents evidencing or relating to the Accounts;

d.      Books, records, and other property at any time evidencing or relating to the Accounts;

e.      Right to receive any credits or payments from GECC arising from the sale of Accounts by the Debtor to GECC;

f.      Insurance policies covering any of the above; and

g.      Cash and non-cash proceeds of the above.

GECC was owed $1,233,425.02 as of the Petition Date. As of the date of the filing of this Plan, GECC was owed approximately $303,364.67.

(2)      <u>Impairment</u>.  This class will be impaired.

(3)      <u>Treatment</u>.  The Debtor and GECC will continue the practice of GECC collecting all outstanding receivables and applying those receivables against the outstanding balance owed, as outlined in the DIP financing orders until such time as this obligation is satisfied in full. Upon the satisfaction of this obligation, GECC shall release its lien on the Debtor's accounts receivables, and those receivables shall be collected directly by the Debtor.

### Class 13 – HCA Equipment Finance, LLC ("HCA"):

(1)      <u>Description of Debt</u>.  The Debtor and HCA entered into a master loan and security agreement dated October 1, 2009, in the original amount of $79,920.36, which included principal and interest at 10.35% per annum (the "Note").  The Note called for 36 monthly payments of principal and interest in the amount of $2,219.48.  The Note was secured by a first priority lien on the following trailers:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2005 | Peerless | CHIP | 1PLE045275PH54019 |
| 2005 | Peerless | CHIP | 1PLE045235PH54020 |
| 2005 | Peerless | CHIP | 1PLE045255PH54021 |

| 2005 | Peerless | CHIP | 1PLE045275PH54022 |
| 2005 | Peerless | MID-POSSUM | 1PLE048245PH54023 |
| 2005 | Peerless | MID-POSSUM | 1PLE048265PH54024 |
| 2005 | Peerless | MID-POSSUM | 1PLE048285PH54025 |
| 2005 | Peerless | MID-POSSUM | 1PLE0482X5PH54026 |
| 2005 | Peerless | POSSUM | 1PLE048215PH54027 |
| 2005 | Peerless | POSSUM | 1PLE048235PH54028 |

HCA was owed $63,502.92 as of the Petition Date.

(2)     Impairment.  This class will be impaired.

(3)     Treatment.  The Debtor's obligations to HCA shall remain secured by the same collateral as existed prior to the Petition Date.  The following terms shall apply to the obligation:

a.     The obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources.

b.     HCA shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

c.     From and after the Effective Date, interest shall accrue on each obligation at 5% per annum.

d.     The Debtor shall make 239 monthly payments to HCA based on an 20 year amortization schedule, with one final payment of all outstanding principal and interest due after 240 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

e.     All prepayment penalties shall be eliminated.

f.     The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  HCA shall be named as the loss payee on such policies.

g.     The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

h.     The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

i.     Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

j.      HCA shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

k.      <u>Sale of collateral</u>. The Debtor may sell some or all of the trailers identified above as collateral of HCA.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V of the Plan.  The net proceeds of sale, after payment of all costs of sale, shall be paid to HCA and shall be applied first to outstanding interest, if any, and next to principal.  The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein.  On the date which is six (6) months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balance on this obligation shall be reamortized over the remaining 234 month term of this obligation, and the monthly payment shall be adjusted accordingly.  The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date.  The Debtor may continue to sell the collateral securing this claim after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

## **Class 14 – Leaf Funding, Inc. ("Leaf"):**

(1)      <u>Description of Debt</u>.  The Debtor is indebted to this creditor in connection with the three (3) loans described below:

a.      <u>Note #1</u>: The Debtor and Leaf entered into a promissory note dated December 21, 2007, in the original principal amount of $59,300.00 ("Note 1").  Note 1 called for 72 monthly payments of principal and interest in the amount of $1,055.00.  Note 1 did not provide the interest rate, but the approximate rate of interest at a fixed rate would be 8.53% per annum.  Note 1 was secured by a first priority lien on the following trailers pursuant to a master security agreement dated December 21, 2007:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2008 | Peerless | Possum | 1PLE048268PL56135 |
| 2008 | Peerless | Possum | 1PLE048288PL56136 |

b.      <u>Note #2</u>: The Debtor and Leaf entered into a promissory note dated July 10, 2008, in the original principal amount of $25,455.39 ("Note 2").  Note 2 called for 60 monthly payments of principal and interest in the amount of $518.50.  Note 2 did not provide the interest rate, but the approximate rate of interest at a fixed rate would be 8.19% per annum.  Note 2 was secured by a first priority lien on the following trailer pursuant to a master security agreement dated December 21, 2007 and April 17, 2008:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2007 | Peerless | 45 foot - 96 wide | 1PLE0452X7PH55376 |

28

c.  Note #3: The Debtor and Leaf entered into a promissory note dated July 22, 2008, in the original principal amount of $47,330.00 ("Note 3").  Note 3 called for 36 monthly payments of principal and interest in the amount of $1,487.00.  Note 3 did not provide the interest rate, but the approximate rate of interest at a fixed rate would be 8.18% per annum.  Note 3 was secured by a first priority lien on the following trailer pursuant to a master security agreement dated December 21, 2007:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 1998 | Fruehauf | Flatbed | 1JJF452F2WS508150 |
| 1998 | Fruehauf | Flatbed | 1JJF452F8WS508153 |
| 1998 | Fruehauf | Flatbed | 1JJF452F9WS508159 |
| 1993 | Fontaine | Flatbed | 13N145301P1557257 |
| 1994 | Fontaine | Flatbed | 13N145309R1559373 |
| 1994 | Fontaine | Flatbed | 13N14530XR1559379 |
| 1993 | Fontaine | Flatbed | 13N145300P1557265 |
| 1993 | Fontaine | Flatbed | 13N145305P1557262 |

Leaf filed claim number 42 in the amount of $103,157.21.  Notes 1, 2, and 3 contain cross-collateral provisions whereby the specific collateral in each Note secures the obligations in the remaining Notes.  The Debtor has made adequate protection payments in the amount of $400.00 on Note 1 and $200.00 on Note 2 to Leaf since the filing of this case

(2)  Impairment.  This class will be impaired.

(3)  Treatment.  The Debtor's three obligations to Leaf shall remain three separate obligations, each secured by the same collateral as existed prior to the Petition Date.  The following terms shall apply to the obligations:

a.  The obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources.

b.  Leaf shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

c.  From and after the Effective Date, interest shall accrue on each obligation at 5% per annum.

d.  The Debtor shall make 239 monthly payments to Leaf on Notes 1 and 2, based on a 20 year amortization schedule, with one final payment of all outstanding principal and interest due after one hundred twenty (120) months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

e.     The Debtor shall make 119 monthly payments to Leaf on Note 3, based on a 10 year amortization schedule, with one final payment of all outstanding principal and interest due after 120 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

f.     All prepayment penalties shall be eliminated.

g.     The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  Leaf shall be named as the loss payee on such policies.

h.     The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

i.     The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

j.     Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

k.     Leaf shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

l.     Sale of collateral. The Debtor may sell certain Chip trailers and Flat trailers that are the collateral of Leaf.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V of the Plan.  The net proceeds of sale, after payment of all costs of sale, shall be paid to Leaf and shall be applied first to outstanding interest, if any, and next to principal.  The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein.  On the date which is 6 months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balance on this obligation shall be reamortized over the remaining monthly terms of these obligations, and the monthly payment shall be adjusted accordingly.  The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date.  The Debtor may continue to sell the collateral securing this claim after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

**Class 15 – Navistar Financial Corporation ("Navistar"):**

(1)     Description of Debt.  The Debtor is indebted to this creditor in connection with the five (5) loans described below:

a.      Acct. #00829200000016282: The Debtor and Navistar entered into a commercial loan and security agreement dated September 9, 2005, in the original principal amount of $233,753.00 ("Note 1"). Note 1 provided for a fixed rate of interest at 7.25% per annum. Note 1 called for 60 monthly payments of principal and interest in the amount of $4,656.21. Note 1 was secured by a first priority lien on the following tractors:

| Year | Model | Description | VIN # |
| --- | --- | --- | --- |
| 2006 | Freightliner | CL 112 Day Cab | 1FUJF0CV46LW27388 |
| 2006 | Freightliner | CL 112 Day Cab | 1FUJF0CV66LW27389 |
| 2006 | Freightliner | CL 112 Day Cab | 1FUJF0CV26LW27390 |

b.      Acct. #66287400000053022: The Debtor and Navistar entered into a commercial loan and security agreement dated September 7, 2006, in the original principal amount of $259,020.00 and interest charges of $75,297.60 ("Note 2"). Note 2 called for 72 monthly payments of principal and interest in the amount of $4,643.30. Note 2 did not provide the interest rate, but the approximate rate of interest at a fixed rate would be 8.8% per annum. Note 2 was secured by a first priority lien on the following trailers:

| Year | Model | Description | VIN # |
| --- | --- | --- | --- |
| 2007 | Peerless | CHIP | 1PLE045227PH55307 |
| 2007 | Peerless | CHIP | 1PLE045247PH55308 |
| 2007 | Peerless | CHIP | 1PLE045267PH55309 |
| 2007 | Peerless | CHIP | 1PLE045227PH55310 |
| 2007 | Peerless | CHIP | 1PLE045247PH55311 |
| 2007 | Peerless | CHIP | 1PLE045267PH55312 |
| 2007 | Peerless | CHIP | 1PLE045287PH55313 |
| 2007 | Peerless | CHIP | 1PLE0452X7PH55314 |
| 2007 | Peerless | CHIP | 1PLE045217PH55315 |
| 2007 | Peerless | CHIP | 1PLE045237PH55316 |

c.      Acct. #78213600000008645: The Debtor and Navistar entered into a commercial loan and security agreement dated January 25, 2007, in the original principal amount of $45,171.00 and interest charges of $14,918.40 ("Note 3"). Note 3 provided for a fixed rate of interest at 8.5% per annum. Note 3 called for 84 monthly payments of principal and interest in the amount of $715.35. Note 3 was secured by a first priority lien on the following trailer:

| Year | Model | Description | VIN # |
| --- | --- | --- | --- |
| 2007 | ITI | Wetline 45 foot | 1Z92B45297T199204 |

d.      Acct. #6628740000061710: The Debtor and Navistar entered into a commercial loan and security agreement dated March 2, 2007, in the original principal

amount of $273,120.00 ("Note 4"). Note 4 provided for a fixed rate of interest at 8.5% per annum. Note 4 called for 84 monthly payments of principal and interest in the amount of $4,325.26. Note 4 was secured by a first priority lien on the following trailers:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045277PA55556 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045297PA55557 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045207PA55558 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045227PA55559 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045297PA55560 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045277PA55561 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045297PA55562 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045207PA55563 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045227PA55564 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045247PA55565 |

e.    Acct. #6628740000066214: The Debtor and Navistar entered into a commercial loan and security agreement dated March 29, 2007, in the original principal amount of $273,120.00 ("Note 5"). Note 5 provided for a fixed rate of interest at 8.5% per annum. Note 5 called for 84 monthly payments of principal and interest in the amount of $4,327.30. Note 5 was secured by a first priority lien on the following trailers:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045267PA55566 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045287PA55567 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE0452X7PA55568 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045217PA55569 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045287PA55570 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE0452X7PA55571 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045217PA55572 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045237PA55573 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045257PA55574 |
| 2007 | Peerless | 45 foot - 102 wide | 1PLE045277PA55575 |

Pursuant to certain cross collateralization language contained in the security agreements, Navistar also asserts a lien on the following trailers:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2004 | Innovative | POSSUM | 1Z92C48204T199225 |
| 2004 | Innovative | POSSUM | 1Z92C48244T199227 |
| 2004 | Innovative | Possum | 1Z92C48224T199226 |
| 2004 | Innovative | Possum | 1Z92C48284T199229 |
| 2004 | Innovative | Possum | 1Z92C48264T199228 |

| 2004 | Innovative | Possum | 1Z92C48244T199230 |
|------|-----------|--------|-------------------|
| 2004 | Innovative | Possum | 1Z92C48264T199231 |
| 2004 | Innovative | Possum | 1Z92C48274T199268 |
| 2004 | Innovative | Possum | 1Z92C48294T199269 |
| 2000 | Innovative | Chip | 1Z92A4524YT029238 |
| 2000 | Innovative | Chip | 1Z92A4526YT029239 |
| 2000 | Innovative | Chip | 1Z92A4522YT029240 |
| 2000 | Innovative | Chip | 1Z92A4524YT029241 |
| 2000 | Innovative | Chip | 1Z92A4526YT029242 |
| 2000 | Innovative | Chip | 1Z92A4525YT029295 |
| 2000 | Innovative | Chip | 1Z92A4527YT029296 |
| 2000 | Innovative | Chip | 1Z92A4529YT029297 |
| 2000 | Innovative | Chip | 1Z92A4521YT029312 |
| 2000 | Innovative | Chip | 1Z92A4523YT029313 |
| 2000 | Innovative | Chip | 1Z92A4525YT029314 |
| 2000 | Innovative | Chip | 1Z92A4525YT029328 |
| 2000 | Innovative | Chip | 1Z92A4527YT029329 |
| 2001 | Innovative | Possum | 1Z92C482X1T029059 |
| 2001 | Innovative | Possum | 1Z92C48261T029060 |
| 2001 | Innovative | Chip | 1Z92A45291T029001 |
| 2001 | Innovative | Chip | 1Z92A45201T029002 |
| 2001 | Innovative | Chip | 1Z92A45211T029042 |
| 2001 | Innovative | Chip | 1Z92A45231T029043 |
| 2001 | Innovative | Chip | 1Z92A45281T029068 |
| 2001 | Innovative | Chip | 1Z92A452X1T029069 |
| 2001 | Innovative | Chip | 1Z92A45221T029079 |
| 2001 | Innovative | Chip | 1Z92A45291T029113 |
| 2001 | Innovative | Chip | 1Z92A45261T029120 |
| 2001 | Innovative | Chip | 1Z92A45281T029121 |
| 2001 | Innovative | Chip | 1Z92A452X1T029122 |
| 2001 | Innovative | Chip | 1Z92A45211T029123 |
| 2001 | Innovative | Chip | 1Z92A45231T029124 |
| 2001 | Innovative | Chip | 1Z92A45251T029125 |
| 2001 | Innovative | Chip | 1Z92A45271T029126 |
| 2001 | Innovative | Chip | 1Z92A45291T029127 |
| 2001 | Innovative | Chip | 1Z92A45221T029146 |
| 2001 | Innovative | Chip | 1Z92A45241T029147 |

The five obligations to Navistar are cross-collateralized.  Navistar was owed $592,555.13 as of the Petition Date.

(2)    <u>Impairment</u>.  This class will be impaired.

(3)    Treatment.  The five obligations comprising Navistar's allowed claim will be divided into two new notes and shall be treated as follows:

a.      Note A.  The follow terms shall apply to Note A.

i.      Note A shall have a principal balance in an amount equal to the (a) all outstanding principal and interest due on Note 1 (Freightliner collateral) on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources on account of these claims.

ii.     Note A shall be secured by the 3 – 2006 Freightliner Day Cab tractors, such lien to have the same validity, priority, and effectiveness as Navistar's liens had on the Petition Date.

iii.    The Debtor shall make 59 monthly payments to Navistar based on a 10 year amortization schedule, with one final payment of all outstanding principal and interest due after 60 months.

iv.     Interest shall accrue on Note A from and after the Effective Date at 5% per annum.

v.      All prepayment penalties shall be eliminated.

vi.     The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  Navistar shall be named as the loss payee on such policies.

vii.    The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

viii.   The Debtor shall pay all property taxes when due, except for taxes paid through this Plan.

ix.     Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

x.      Navistar shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

xi.     As soon as practical after the Effective Date, the Debtor and Navistar will execute new promissory notes incorporating the terms of this Plan and Note A.

xii.      Sale of collateral.  The Debtor shall have the right to sell the collateral securing Note A, free and clear of liens, in accordance with Section V of the Plan, provided that the debt to Navistar for Note A is paid in full.

b.      Note B. The following terms shall apply to Note B:

i.      Note B shall be comprised of Note 2, Note 3, Note 4, and Note 5 and shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources.

ii.      Navistar shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its  claim is paid in full.

iii.      From and after the Effective Date, interest shall accrue on the New Navistar Obligation at 5% per annum.

iv.      The Debtor shall make 239 monthly payments to Navistar based on a 20 year amortization schedule, with one final payment of all outstanding principal and interest due after 240 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

v.      All prepayment penalties shall be eliminated.

vi.      The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  Navistar shall be named as the loss payee on such policies.

vii.      The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

viii.      The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

ix.      Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

x.      Navistar shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

xi.      Sale of collateral. The Debtor may sell certain Chip trailers identified above as collateral of Navistar.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V

of the Plan.  The net proceeds of sale, after payment of all costs of sale, shall be paid to Navistar and shall be applied first to outstanding interest, if any, and next to principal.  The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein.  On the date which is 6 months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balance on the New Navistar Obligation shall be reamortized over the remaining 234 month term of this obligation, and the monthly payment shall be adjusted accordingly.  The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date.  The Debtor may continue to sell the collateral securing this claim after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

      xii.      <u>Release of liens</u>.  Navistar agrees that upon the Debtor making 6 consecutive monthly payments, that it will release its lien and return the titles to one-half of the trailers that are encumbered pursuant to the cross collateral provisions in Note 1, Note 2, Note 3, Note 4, and Note 5.  Navistar will release the remaining liens and titles to the Debtor upon the Debtor making an additional 6 consecutive monthly payments.

## Class 16 – PACCAR Financial Corp. ("PACCAR"):

(1)     <u>Description of Debt</u>.  The Debtor and PACCAR entered into a financing and security agreement dated January 10, 2006 with a principal balance in the amount of $437,455.00 and finance charges in the amount of $92,780.60 (the "Note").  The Note called for 60 monthly payments of principal and interest in the amount of $8,837.26.  The Note did not provide the interest rate, but the approximate rate of interest at a fixed rate would be 8.8% per annum The Note was secured by a first priority lien on the following tractors:

| Year | Model | Description | VIN # |
|------|-------|-------------|-------|
| 2006 | Kenworth | T 800 Day Cab | 1XKDD08X76J155854 |
| 2006 | Kenworth | T 800 Day Cab | 1XKDD08X96J155855 |
| 2006 | Kenworth | T 800 Day Cab | 1XKDD08X06J155856 |
| 2006 | Kenworth | T 800 Day Cab | 1XKDD08X26J155857 |
| 2006 | Kenworth | T 800 Day Cab | 1XKDD08X46J155858 |

PACCAR filed claim number 18 in the amount of $110,891.69.  Pursuant to a consent order entered by the Court, the Debtor has been making monthly adequate protection payments in the amount of $6,000.00.

(2)     <u>Impairment</u>.  This class will be impaired.

(3)     <u>Treatment</u>.  The Debtor's obligations to PACCAR shall remain secured by the same collateral as existed prior to the Petition Date.  The following terms shall apply to the obligation:

a.    The obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments or payments received from other sources.

b.    PACCAR shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

c.    From and after the Effective Date, interest shall accrue on each obligation at 5% per annum.

d.    The Debtor shall make 35 monthly payments to PACCAR based on a 3 year amortization schedule, with one final payment of all outstanding principal and interest due after 36 months.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

e.    All prepayment penalties shall be eliminated.

f.    The Debtor shall maintain insurance on the collateral in such types as are standard in the industry.  PACCAR shall be named as the loss payee on such policies.

g.    The Debtor shall maintain the collateral in good-working condition, normal wear and tear excepted.

h.    The Debtor shall pay all personal property taxes when due, except for taxes paid through this Plan.

i.    Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fails to make any payment within fifteen (15) days of the due date.

j.    PACCAR shall retain the right to inspect its collateral upon reasonable notice to the Debtor.

k.    Sale of collateral. The Debtor may sell certain tractors that are the collateral of PACCAR.  The Debtor at any time may sell any collateral securing this claim, free and clear of liens, in accordance with Section V of the Plan.  The net proceeds of sale, after payment of all costs of sale, shall be paid to PACCAR and shall be applied first to outstanding interest, if any, and next to principal.  The Debtor shall have a period of 6 months following the Effective Date to sell any or all of the collateral securing such claim and have it applied against the loan balance as described herein.  On the date which is 6 months following the Effective Date (the "Payment Reamortization Date"), the then existing outstanding balance on this obligation shall be reamortized over the remaining monthly terms of these obligations, and the monthly payment shall be adjusted

37

accordingly.  The Debtor shall commence making monthly payments at the new payment amount with the monthly payment that is next due after the Payment Reamortization Date.  The Debtor may continue to sell the collateral securing this claim after the Payment Reamortization Date; however, such sales will not cause the monthly payment to be recalculated and reduced.

### Class 17 – CIT Technology Financing Services, Inc. ("CIT"):

(1)     <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into an executory contract with CIT whereby it leased equipment.  CIT filed claim number 44 in the amount of $17,915.37.

(2)     <u>Impairment</u>:  This class will be impaired.

(3)     <u>Treatment</u>.  Pursuant to an Order dated March 22, 2010, the Debtor has previously rejected this contract.  Any claim arising from such rejection shall be treated in the unsecured class that is appropriate to the size of CIT's allowed claim.

### Class 18 - Comdata:

(1)     <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into an executory contract with Comdata whereby the Debtor's employees uses Comdata cards for fuel purchases.

(2)     <u>Impairment</u>:  This class will be unimpaired.

(3)     <u>Treatment</u>.  Pursuant to an Order dated February 25, 2010, the Debtor has previously assumed this contract.

### Class 19 – Cooper Leasing:

(1)     <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into a lease with Cooper Leasing on May 14, 2004 and subsequently modified on February 17, 2010, whereby the Debtor leased 3 FSL Tractors from Cooper Leasing and had an associated maintenance contract.  Cooper Leasing filed claim number 12 in the amount of $2,829.63, representing goods sold.  This obligation was also previously secured by a letter of credit in the amount of $100,000.00 and Cooper Leasing has received the sum of $37,000.00 from a draw on this letter of credit.

(2)     <u>Impairment</u>:  This class will be unimpaired.

(3)     <u>Treatment</u>.  Pursuant to Section 365, the Debtor hereby assumes this lease.

### Class 20 - GE Capital Corp. – Equipment Lease:

(1)    Description of Debt.  Prior to filing its petition, the Debtor entered into an executory contract with DANKA, account number 4063096-004, for Canon Copiers, IR Image Runners.

(2)    Impairment:  This class will be impaired.

(3)    Treatment.  Pursuant to Section 365 of the Code, the Debtor rejects its contract with GE Capital Corp.  Any claim arising from such rejection shall be treated in the unsecured class that is appropriate to the size of GE Capital Corp.'s allowed claim.

### Class 21 - GE Transportion Finance:

(1)    Description of Debt.  Prior to filing its petition, the Debtor entered into two leases with GE Transportation Finance on August 28, 2009 and October 23, 2009, whereby the Debtor leased a total of 22 trailers from GE Transportation Finance.

(2)    Impairment:  This class will be unimpaired.

(3)    Treatment.  Pursuant to Section 365, the Debtor hereby assumes this lease.

### Class 22 – Hasler Financial Services ("Hasler"):

(1)    Description of Debt.  Prior to filing its petition, the Debtor entered into a lease with Hasler Financial Services, whereby the Debtor leases postage machines and meters for its Harrells, North Carolina location.

(2)    Impairment:  This class will be unimpaired.

(3)    Treatment.  Pursuant to Section 365, the Debtor hereby assumes this lease.

### Class 23 – Independent Mailing Systems ("IMS"):

(1)    Description of Debt.  Prior to filing its petition, the Debtor entered into a lease with IMS for certain mailing systems

(2)    Impairment:  This class will be impaired.

(3)    Treatment.  Pursuant to Section 365 of the Code, the Debtor rejects its contract with IMS.  Any claim arising from such rejection shall be treated in the unsecured class that is appropriate to the size of IMS's allowed claim.

### Class 24 - Inter-Tax, Inc.:

(1)    Description of Debt.  Prior to filing its petition, the Debtor entered into an executory contract with Inter-Tax, Inc. on January 1, 2005 under which Inter-Tax collects data regarding the Debtor's fuel purchases, truck dispatch records, and other information and provides

reports which the Debtor uses to calculate fuel tax liabilities, calculate road tax liabilities, produce charge-back reports, prepare fuel tax filings, and provide data to support applications for International Registration Plan licenses.

     (2)    <u>Impairment</u>:  This class will be unimpaired.

     (3)    <u>Treatment</u>.  Pursuant to an Order dated February 25, 2010, the Debtor has previously assumed this contract.

### Class 25 - PeopLease Corp.

     (1)    <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into a lease with PeopLease on August 5, 2009, whereby the Debtor leases employees to be used in the operation of the Debtor's business.

     (2)    <u>Impairment</u>:  This class will be unimpaired.

     (3)    <u>Treatment</u>.  Pursuant to Section 365, the Debtor hereby assumes this lease.

### Class 26 – PeopleNet Communication Corporation ("PeopleNet"):

     (1)    <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into a contract with PeopleNet on March 3, 2008.  PeopleNet provides a service that enables the Debtor to communicate with its employees on the road and also obtain information such as engine diagnostics speed diagnostics, onboard event recording for accident reconstruction, automatic fuel tax computation, and more.

     (2)    <u>Impairment</u>:  This class will be unimpaired.

     (3)    <u>Treatment</u>.  The Debtor has previously filed a motion to assume this contract.

### Class 27 – Penske Leasing ("Penske"):

     (1)    <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into an executory contract with Penske whereby it leased tractors.

     (2)    <u>Impairment</u>:  This class will be impaired.

     (3)    <u>Treatment</u>.  Pursuant to an Order dated March 11, 2010, the Debtor has previously rejected this contract.  Any claim arising from such rejection shall be treated in the unsecured class that is appropriate to the size of Penske's allowed claim.  Penske shall have thirty (30) days from the Effective Date to file a proof of claim for such rejection damages or be forever barred from asserting any such claim.

### Class 28 – Rair Technologies:

(1)    <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into a contract with Rair, whereby Rair provided the Debtor with information related to its drivers' logs.

(2)    <u>Impairment</u>:  This class will be unimpaired.

(3)    <u>Treatment</u>.  Pursuant to Section 365, the Debtor hereby assumes this lease.

**Class 29 – Ryder Transportation Services ("Ryder"):**

(1)    <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into a lease with Ryder on October 12, 2009, whereby the Debtor leases 13 FSL Tractors form Ryder.  Ryder filed claim numbers 32 and 43 in the respective amounts of $179,043.84 and $145,722.51, representing lease rejection damages and amounts owed.  This obligation was also previously secured by a letter of credit in the amount of $28,000.00 and Ryder has received the sum of $28,000.00 from a draw on this letter of credit.

(2)    <u>Impairment</u>:  This class will be unimpaired.

(3)    <u>Treatment</u>.  Pursuant to Section 365, the Debtor hereby assumes this lease.

**Class 30 – TMW Systems, Inc.**

(1)    <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into a contract with TMW, whereby TMW provided a license for certain trucking software.  This contract was subsequently modified by the parties.

(2)    <u>Impairment</u>:  This class will be unimpaired.

(3)    <u>Treatment</u>.  Pursuant to Section 365, the Debtor hereby assumes this lease, as modified by the parties.

**Class 31 - Toshiba Financial Services/GE Equipment Finance:**

(1)    <u>Description of Debt</u>.  Prior to filing its petition, the Debtor entered into a lease/contract with Toshiba Financial Services on August 18, 2009, whereby the Debtor leased two Toshiba copiers from Toshiba.  This lease was subsequently assigned to GE Equipment Finance.

(2)    <u>Impairment</u>:  This class will be unimpaired.

(3)    <u>Treatment</u>.  Pursuant to Section 365, the Debtor hereby assumes this lease.

**Class 32 – Xodus Information Services:**

41

(1)      Description of Debt.  Prior to filing its petition, the Debtor entered into a contract with Xodus Information Services on May 4, 2009, whereby Xodus provided computer and technology services and repairs to the Debtor.

(2)      Impairment:  This class will be unimpaired.

(3)      Treatment.  Pursuant to Section 365, the Debtor hereby assumes this lease.

### Class 33 – Xtra Lease:

(1)      Description of Debt.  Prior to filing its petition, the Debtor entered into a contract with Xtra Lease that enables the Debtor to lease additional dry van trailers.

(2)      Impairment:  This class will be unimpaired.

(3)      Treatment.  Pursuant to Section 365, the Debtor hereby assumes this lease.

### Class 34 - Alk Technologies:

(1)      Description of Debt.  Prior to filing its petition, the Debtor entered into a contract with Alk Technologies, whereby Alk provides a license for trucking software that computes mileage and creates maps.

(2)      Impairment:  This class will be unimpaired.

(3)      Treatment.  Pursuant to Section 365, the Debtor hereby assumes this lease.

### Class 35 - Rand McNally:

(1)      Description of Debt.  Prior to filing its petition, the Debtor entered into an executory contract with Rand McNally whereby Rand McNally provided shipping logistic services to the Debtor.

(2)      Impairment:  This class will be impaired.

(3)      Treatment.  Pursuant to Section 365 of the Code, the Debtor rejects its contract with Rand McNally.  Any claim arising from such rejection shall be treated in the unsecured class that is appropriate to the size of Rand McNally's allowed claim.  Rand McNally shall have thirty (30) days from the Effective Date to file a proof of claim for such rejection damages or be forever barred from asserting any such claim.

### Class 36 - Customer Contracts:

(1)      Classification. Prior to filing its petition the Debtor entered into Agreements with various customers, pursuant to which the Debtor was hired to provide truck shipping service to the customer.  The customers included in this class are listed below:

Edwards Wood Products
Georgia-Pacific, LLC
International Paper Co.
So. Atlantic Canners, Inc.
Weyerhaeuser NR Co.

(2)    Impairment:  This class will be unimpaired.

(3)    Treatment.  Pursuant to Section 365, the Debtor hereby assumes these executory contracts.

### Class 37 – Owner-Operator Contracts:

(1)    Classification. Prior to filing its petition the Debtor entered into Agreements with various owner-operators, pursuant to which the Debtor hired the owner-operator to provide truck shipping services.  The customers included in this class are listed below:

Ben & Son Trucking
Oliver L. Blizzard
Boykin Trucking
Bridges Trucking
Brown Farms
Raymond L. Carr
Clinton Dawson
Failer's Trucking
R.G. Finch
G.W. Piner Trucking
Harris Trucking
Jerry D. Harris
Joe N. Harris
Herring Transport
Barry Hollingsworth
Johnson Trucking
Kennedy Transport
Kerwest, Inc.
L. Taylor Trucking, Inc.
Jeffery Long
David L. Lyles
M & M Co.
Perry Melvin
Moses Transportation
Larry T. Ray
Reeves Services, Inc.
Rick Bostick Construction
Robinson & Sons

Robinson Farms
Smith Trucking
Thomas Robinson Trucking
Michael S. Thompson
Tommy Smith Trucking
Henri David Valencia
Wheeler Trucking
Darrett D. Williams
Valdosta Williams

(2)     Impairment:  This class will be unimpaired.

(3)     Treatment.  Pursuant to Section 365, the Debtor hereby assumes these executory contracts.

### Class 38 - Rejected Executory Contracts:

(1)     Description of Debt.  This Class consists of all executory contracts not otherwise assumed by the Debtor.  A list of the contracts to be rejected is contained on Exhibit B to the Debtor's Disclosure Statement.

(2)     Impairment:  This class will be impaired.

(3)     Treatment.  Pursuant to Section 365 of the Code, the Debtor hereby rejects these contracts.  Claims arising from the rejection of such contracts shall be treated in the appropriate unsecured creditor class.  Creditors shall have thirty (30) days from the Effective Date to file a proof of claim for such rejection damages or be forever barred from asserting any such claim.

### Class 39 – Ayden Diesel, Inc. ("Ayden Diesel") Secured Claim:

(1)     Description of Debt.  Prior to filing its petition, the Debtor entered into an agreement with Ayden Diesel to repair one of the Debtor's tractors, a 2001 Freightliner with VIN #1FUJACAS81LF12989 (the "Tractor").  The Debtor failed to pay for repairs on the Tractor and Ayden Diesel filed claim number 32 in the secured amount of $10,615.53.  The basis for the security interest is a mechanics liens perfected by possession pursuant to section 44A-2(d) of the North Carolina General Statutes.  This claim is comprised of $3,975.33 for repairs and $6,640.00 for 83 days of storage.

(2)     Impairment.  This class will be impaired.

(3)     Treatment.  The Debtor hereby surrenders the Tractor to Ayden Diesel in full satisfaction of the mechanics lien and any other obligation arising from the repair and storage of the Tractor.

### Class 40 – Grover Ezzell:

(1)     Description of Debt.  This Class consists of the allowed claim of Grover Ezzell for sums advanced to the Debtor post-petition to pay for certain license tags in the amount of $50,000.00.

(2)     Impairment.  This class will be impaired.

(3)     Treatment.     This claim shall be paid from the sale of the collateral securing this claim.

### Class 44 – General Unsecured Claims Less Than $1,000.00:

(1)     Description of Debt.  This Class consists of all allowed, undisputed, non-contingent unsecured claims of $1000.00 or less, and claims in excess of $1,000.00 which give written notice to the Debtor prior to the Effective Date that they waive their claim in excess of $1,000.00 and elect to be treated in this Class.

(2)     Impairment.  This class will be impaired.

(3)     Treatment.     Holders of claims in this class shall receive 25% of their allowed claims, in full and complete satisfaction thereof, within sixty (60) days of the Effective Date.

### Class 42 – General Unsecured Claims Greater Than $1,000.01:

(1)     Description of Class.  This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's petition or as otherwise approved by the Court greater than $1,000.01, except for claims electing to be classified under Class 42.

(2)     Impairment.  This class will be impaired.

(3)     Treatment.  The approximate total of general unsecured claims based on claims filed or scheduled, and projected deficiency claims, as of the date of the filing of this Plan is $3,481,205.01.  In accordance with the liquidation analysis attached as "Exhibit C" to the Disclosure Statement, the Debtor proposes to pay general unsecured claims $600,000.00, over a period of ten years, with quarterly payments of $15,000.00, commencing one year after the Effective Date and continuing quarterly thereafter for a period of ten years.

The Debtor may investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548.  Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

### Class 43 – Equity Security Holders:

(1)     Classification.  This class consists of the Debtor's shareholders:

| | |
|---|---|
| Grover J. Ezzell | 66.67% ownership |
| Louise D. Ezzell | 33.33% ownership |

(2)    <u>Impairment</u>.  This class will be unimpaired.

(3)    <u>Treatment</u>.  Upon confirmation of the Debtor's Plan, the equity security holders shall retain their ownership interests.

## IV.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified herein, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A.    The Debtor proposes to make payments under the Plan from the income derived from the continued operation of its shipping business and from the sale of real and personal property.

B.    <u>Surrender of Property of the Estate</u>.  All properties surrendered by the Debtor in accordance with this Plan shall be valued at an amount 1) agreed by the Debtor and the specific secured creditor on said surrendered property, or 2) by the Bankruptcy Court pursuant to § 506(a) of the Code.

C.    <u>Sale Free and Clear of Liens</u>.  All real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests.  All real or personal property sold by the Debtor shall be sold pursuant to the free and clear order to be entered.  No further motions related to the sales of property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

D.    <u>Method of Distribution</u>.  The Reorganized Debtor shall make all disbursements to creditors under the Plan.  Upon the sale of the real or personal property proposed to be sold by this Plan that is encumbered by liens in favor of creditor(s), the liens secured by such property shall attach to the net proceeds of sale remaining after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under § 506(c) of the Code), and shall be paid to lienholders in accordance with the

priorities of the liens.

E.  <u>Procedure for Deficiency Claims</u>.  Any creditor asserting a deficiency claim shall file a proof of claim within the time period specified in the treatment for such creditor or within sixty (60) days of the Effective Date whichever is longer, or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  In the event the Debtor obtains its Final Decree prior to the deadline for filing such deficiency claim, such creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim form shall not be required, but the creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the amount of such claim and an itemization of such claim.

F.  <u>Claims Paid by Third Parties</u>.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under this Plan.

G.  Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

H.  <u>De Minimis Distributions</u>.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim.  Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

I.  <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim.  Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

J.  <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>.  All transactions avoided or otherwise set aside pursuant to §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to § 551 and applicable case law.  Funds received from such transactions shall be distributed to creditors according to the priorities of the Code.  In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

K.  <u>Exemption from Transfer Taxes</u>.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or

the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of this Plan.

L.    <u>Proceedings Against Guarantors</u>.  As long as the Debtor remains current on its obligations to creditors holding guaranty claims against one or both of the Debtor's officers, creditors shall be prohibited from pursuing any action against other entities or guarantors to collect on their claims.  Upon the failure of the Debtor to make payments to a creditor, such payment not being cured within ten days of its due date, unless another deadline is provided for such creditor, creditors shall be entitled to resume and/or commence any proceedings against guarantors according to their rights and remedies under the guarantor documents.  Unless specifically excepted in a creditor's treatment, the creditor agrees that if the Debtor makes all required Plan payments to said creditor, the agreements giving rise to any claims against other entities or guarantors shall be modified such that such claims are extinguished.

M.    The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

N.    The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

O.    Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

P.    Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

Q.      Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

R.      All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

S.      The Debtor intends to maintain its current officers and management personnel subsequent to the Effective Date. Grover Ezzell shall serve as the President and Chief Executive Officer. Mr. Ezzell shall continue to receive compensation in the amount of $115,003.20, plus the benefits described in the Consent Order Approving Compensation and Employment of Officers. Louise Ezzell shall serve as the Secretary. Mrs. Ezzell shall continue to receive compensation in the amount of $15,080.00, plus the other payments and benefits described in the Consent Order Approving Compensation and Employment of Officers. These payments shall continue to be made pursuant to the lease arrangement with PeopLease.

T.      <u>Procedure for Payment of Professional Fees</u>.    Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

## VI.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VII.  PROVISIONS GOVERNING DISTRIBUTIONS

A.      <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.      <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

## VIII.  ACCEPTANCE OR REJECTION OF PLAN;
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.      <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims

shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B. <u>Acceptance by a Class of Creditors</u>. Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C. <u>Claimants Entitled to Vote</u>. Holders of impaired claims shall be entitled to vote if:

(1)     Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed. The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)     Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)     Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)     Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. <u>Confirmation Hearing</u>. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. <u>Acceptances Necessary to Confirm the Plan</u>. At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. <u>Confirmation of Plan Without Necessary Acceptances</u>. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In

order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan entitled "Cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## IX.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under § 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## X.  EFFECT OF CONFIRMATION

A.      Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B.      Injunction.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to § 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order.  Notwithstanding the foregoing, the Plan does not release or waive any claims it may have against any party in interest.

## XI.  RELEASE OF TITLE TO PROPERTY

A.      Vehicles.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10)

days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The debtor(s) specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B.     Real Property.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor. The failure of any such party to comply with this section shall results in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by § 45-36.9(c) of the N.C. General Statutes. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor specifically reserves the right to file a motion to reopen this case under § 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XII.  APPLICATION OF PLAN PAYMENTS

A.     All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor. In the event that a creditor is entitled to costs and/or attorneys fees post-petition under § 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with § 524(i).

B.     Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to

otherwise comply with 11 U.S.C. § 524(i).

## XIII.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of §§ 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.    to determine any and all objections to the allowance of claims and/or interests;

2.    to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.    to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.    to determine all controversies and disputes arising under or in connection with the Plan;

5.    to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.    to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.    to determine such other matters and for such other purposes as may be provided for in the confirmation order;

8.    to determine all disputes regarding property of the estate;

9.    to establish and adjust procedures for the orderly administration of the estate;

10.    to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11.    to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XIV.  MISCELLANEOUS PROVISIONS

A.    Survival of Terms.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.      <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C.      <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.      <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.      <u>Incorporation of Disclosure Statement</u>.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

(the rest of this space left intentionally blank)

Respectfully submitted, this the 22nd day of April, 2010.

s/Trawick H. Stubbs, Jr.
TRAWICK H. STUBBS, JR.
N.C. State Bar #4221

s/Laurie B. Biggs
LAURIE B. BIGGS
N.C. State Bar No. 31845

s/William H. Kroll
WILLIAM H. KROLL
N.C. State Bar No. 39149

STUBBS & PERDUE, P.A.
P.O. Box 1654
New Bern, NC  28563-1654
(252) 633-2700
Attorneys for Debtor

EZZELL TRUCKING, INC.

By: s/Grover J. Ezzell
    Grover J. Ezzell, President